# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ex rel. **GLENN F. NICHOLS** and **UNITED STATES OF AMERICA**, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 4:02-cv-66(HL) |
| **OMNI H.C., INC, et al.** | : : : | |
| Defendants. | : | |

# ORDER

This matter is before the Court on Defendants' Motion Under Rules 9(b) and 12(b)(6) to Dismiss Relator's Second Amended Complaint (Doc. 97). After consideration, the Court grants the Motion, as more fully set forth below.

**I.   BACKGROUND**

Beginning in 1985 and continuing until January of 2002, Glenn F. Nichols was employed by Oak Manor Nursing Home, Inc. and Pine Manor Nursing Home, Inc. in Muscogee County, Georgia. On May 8, 2002, Nichols filed a qui tam action on behalf of the United States in which he alleged that his former employers and others presented false claims to the Government in violation of 31 U.S.C.A. § 3729. Nichols named as Defendants Omni H.C., Inc. ("Omni"), Oak Manor Nursing Home, Inc. ("Oak Manor"), Pine Manor Nursing Home, Inc. ("Pine Manor"), J. Steve Wilson, and J. Grant Wilson. As required by 31 U.S.C.A. § 3730(b)(2), the complaint was placed under seal,

awaiting a decision by the Government as to whether it would intervene and act on the complaint. Three years later, on November 15, 2005, the Government filed a Notice of Partial Intervention.

In the Notice of Partial Intervention, the Government stated its intention to proceed with one issue presented by Nichols: "Defendant's alleged cost report fraud or alleged inflated or falsified cost reports by including goods, services, salaries, and/or other expenses that were not used for the benefit of OMNI H.C., Oak Manor, and Pine Manor." (Notice at 1.) The Government declined to intervene "as to alleged 'quality of care issues' or Defendant's alleged falsification of records with regard to patient care and/or Defendant's alleged failure to render adequate patient care." (Notice at 1.) The Government also expressed its intention to include additional grounds for recovery under the False Claims Act based on new information, and sought permission to file an amended complaint.

After the Government filed its Notice of Partial Intervention, on November 22, 2005, Nichols filed his First Amendment to Complaint. Nichols amended the complaint to allege that his discharge in early 2002 was a direct result of complaints and objections he made to his superiors concerning the illegal practices allegedly undertaken by them. Nichols brought his claims pursuant to 31 U.S.C.A. § 3730(h), which permits an employee who was the subject of retaliation because of acts done in furtherance of a False Claims Act action to seek relief in the federal district courts.

Consistent with its Notice of Partial Intervention and the Court's order of

November 18, 2005, the Government filed an amended complaint on January 17, 2006. The amended complaint alleged, among other things, that Omni, via Oak Manor and Pine Manor, violated the False Claims Act by submitting falsified reports to Medicare and fraudulently sought reimbursement of salaries for employees who provided services to non-participating Omni affiliates.

After the Government filed its amended complaint, on May 17, 2007, Nichols filed a Recast Second Amended Complaint, in which he restated his retaliatory discharge claim and sought to proceed as to those claims over which the Government did not intervene. The recast complaint incorporated by reference the Government's complaint filed on January 17, 2006. Nichols asserted claims for each electronically submitted claim for reimbursement made to Medicare and Medicaid during the time period alleged in the Government's amended complaint and continuing to present day. Nichols alleged that each electronic submission was a false claim separate and distinct from the false cost reports identified by the Government in its amended complaint. Nichols also asserted claims related to the "quality of care issues" presented in the initial complaint, but as to which the Government declined to intervene. According to Nichols, Defendants falsified patient records to make it appear that patient care had been given when no such care had occurred. The Recast Second Amended Complaint is the subject of Defendants' Motion Under Rules 9(b) and 12(b)(6) to Dismiss.

## II. CONCLUSIONS OF LAW

The allegations raised by Nichols in his Recast Second Amended Complaint are presented in three sections: Retaliatory Discharge Claims, Claims Relating to the Number of False Claims at Issue, and Claims Relating to Quality of Care Issues. Defendants have moved for dismissal as to each section. The Court will address the Motion to Dismiss in the order of each of the sections of the recast complaint.

**A.      Retaliatory Discharge Claims**

Defendants first challenge on Motion to Dismiss is to Nichols' retaliatory discharge claim. When Nichols filed his original complaint in May of 2002, he did not set forth allegations related to a retaliatory discharge claim. The first time that Nichols alleged retaliatory discharge was in his first amended complaint filed on November 23, 2005. Defendants contend that having waited until 2005 to bring his retaliation claim, it is barred by the applicable statute of limitations. The Court agrees.

The False Claims Act provides its own limitations period, stating as follows:

> A civil action under section 3730 may not be brought–(1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known . . . but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C.A. § 3731(b) (West 2003). However, the Supreme Court of the United States has determined that the express limitations period set forth at § 3731(b) is inapplicable to retaliation claims brought pursuant to § 3730(h). Graham County Soil & Water Conserv. Dist. v. United States ex rel. Wilson, 545 U.S. 409, 422, 125 S. Ct. 2444,

4

2453 (2005). Rather, the Supreme Court has directed that the most closely analogous state statute of limitations applies to determine the limitations period for retaliation claims brought pursuant to § 3730(h). Id.

Defendants maintain that the most closely analogous state statute of limitations is provided by O.C.G.A. § 9-3-22, which sets the limitations period for all "actions for the enforcement of rights accruing to individuals under statutes or acts of incorporation or by operation of law." O.C.G.A. § 9-3-22 (LexisNexis 2007). Under this provision, the limitation period is 20 years after the right of action has accrued except that "all actions for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime" must be brought within two years after the right of action has accrued. Id. Defendants thus contend that under this provision, Nichols' had two years from January 2002, when he was discharged, to bring a retaliation claim, and his right to bring the claim expired well before November of 2005, when he amended his complaint.

Nichols does not take issue with Defendants use of O.C.G.A. § 9-3-22 as the most closely analogous state statute of limitations to apply, nor does he argue an alternative statutory limitations period. Therefore, the Court will accept the two-year limitations period set forth at O.C.G.A. § 9-3-22 as the limitations period applicable to Nichols' retaliation claim.[1] Applying this limitations period, Nichols' retaliation claim is

---

[1] In Graham the Court suggested that in Georgia the analogous Code section would be O.C.G.A. § 9-3-33, which provides a two-year limitation period for injuries to the person. Under this Code section the result would be the same.

barred unless the amendment relates back to the date of the filing of the original complaint on May 8, 2002.

An amendment to a pleading relates back to the date of the original pleading when one of three conditions is met. Here, Nichols contends that the second condition applies: "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (effective Dec. 1, 2007).[2]

As Defendants note, the relation back rule "relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. 644, 659, 125 S. Ct. 2562, 2572 (2005). Thus, the issue here is whether Nichols' claims that Defendants routinely engaged in fraudulent activity by wrongfully causing false claims to be submitted by its agents share a common core of operative facts with his new claim that he was discharged by Defendant J. Grant Wilson as a direct result of complaints he made to his superiors concerning the fraudulent practices. In the Court's view, the answer to that question is "no" and his new claim does not relate back to the original complaint.

A party moving under § 3730(h), as Nichols is here, can succeed even if his employer never engaged in any fraudulent activity. *See* Graham, 545 U.S. at 415 n.1,

---

[2] Prior to December 1, 2007, Rule 15(c)(1)(B) was set out as Rule 15(c)(2). The 2007 Amendment made changes to the Civil Rules that were intended to be stylistic only, but which resulted in a renumbering of the paragraphs. Fed. R. Civ. P. 15 advisory committee's note (2007).

125 S. Ct. at 2449 n.1 (noting "that proving a violation of § 3279 is not an element of a § 3730(h) cause of action"). Rather, the success of a claim under § 3730(h) turns on whether the employee can show that his employer discriminated against the terms and conditions of his employment "because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section." 31 U.S.C.A. § 3730(h) (West 2002). An employer defending against a retaliatory discharge claim under § 3730(h) will have the opportunity to raise various defenses, including, for example, the defense that he is not an employer within the meaning of the section, or that the employee was not the subject of retaliation either because the alleged conduct did not occur or that it occurred but for non-retaliatory reasons. Thus, the operative facts in a retaliatory discharge claim center around the employee, his employment history, and his conduct vis-à-vis his employer rather than the employer's allegedly fraudulent conduct vis-à-vis the Government.

The operative facts with respect to the false claims alleged to have occurred here center around the patients in the Defendant facilities, the treatments they received or did not receive, and the billing practices that the Defendants employed. The validity of Nichols' allegations as to the patient billing practices, as pleaded in the original complaint, are not necessary to a determination as to Nichols' new allegations pertaining to the lawfulness of Defendants' conduct toward him as an employee. As a result, there is not a common "core of operative facts" uniting the original and newly asserted claims, and Nichols' retaliatory discharge claims do not relate back to the

original complaint.  Defendants' Motion to Dismiss is granted with respect to the retaliatory discharge claim set forth in Nichols' Recast Second Amended Complaint.

    **B.**    **Claims Relating to the Number of False Claims at Issue**

        **1.**    **Relator's Right to Maintain Claims for Violations**

In the second section of his recast complaint, Nichols seeks to bring additional claims for each electronic submission made to Medicare and Medicaid. As to this section, Defendants' initial argument is that Nichols is attempting to amend the Government's complaint or to control the action in a manner not permitted under the False Claims Act. The Court finds no merit to this argument.

Although the False Claims Act permits private persons to bring civil claims pursuant to § 3730, such actions are to be brought on behalf of the Government. The Government must then elect whether to proceed with the action, or decline to intervene. The statute provides, however, that if the Government elects not to proceed with the action, "the person who initiated the action shall have the right to conduct the action." 31 U.S.C.A. § 3730(c)(3) (West 2003). In this case, the Government elected to proceed with some claims, but declined to proceed as to others. The claims alleged by Nichols in the "False Claims" section of his recast complaint are for those claims as to which the Government declined to proceed.

At least one court construing § 3730(c)(3) has held that when the Government intervenes as to some claims in a qui tam action, the relator may pursue those claims as to which the Government has declined to intervene. United States ex rel. O'Keefe

8

v. McDonnell Douglas Corp., 918 F. Supp. 1338, 1347 (E.D. Mo. 1996). Nothing in the language of the statute or offered by Defendants suggests that Nichols should be barred from pursuing those claims as to which the Government has declined to intervene. Therefore, insofar as Defendants' Motion to Dismiss is based on this theory, the Motion is denied.

### 2. Rule 9(b) Requirements

Defendants' alternate argument with regard to Nichols' False Claims Act allegations is that they fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (effective Dec. 1, 2007). The particularized pleading requirements of Rule 9(b) apply to actions under the False Claims Act. United States ex rel. Clausen v. Lab. Corp., 290 F.3d 1301, 1308-09 (11th Cir. 2002). In a False Claims Act action, therefore, "a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Clausen, 290 F.3d at 1310 (quoting United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla., 19 F.3d 562, 567-68 (11th Cir. 1994) (per curiam)).

Furthermore, the Eleventh Circuit has declared that a relator in a False Claims Act action must do more than merely allege a private scheme; the relator must provide

within the complaint "some indicia of reliability . . . to support the allegation of *an actual false claim* for payment being made to the Government." Clausen, 290 F.3d at 1311. In Clausen, therefore, the Eleventh Circuit upheld the district court's dismissal of a False Claims Act action because the appellate court found that the relator's "failure to allege with any specificity if–or when–any actual improper claims were submitted to the Government" was fatal to the case. Id. at 1312.

Here, Nichols' claims are extensions of the Government's claims, in that Nichols' recast complaint incorporated by reference the amended complaint filed by the Government on January 17, 2006. Therefore, the Court will first outline the Government's contentions as set forth in the Government's amended complaint.

According to the Government, Omni is a Georgia corporation composed of numerous affiliates. (Am. Compl. ¶ 22.) During the dates alleged in the amended complaint, only three affiliate entities of Omni were eligible participants in the Medicare and Medicaid programs: Oak Manor, Pine Manor, and Keyesville Nursing Home. (Am. Compl. ¶ 23.) The Government alleges that the owners and chief financial officer of Omni submitted falsified cost reports to Medicare and Medicaid from the three authorized affiliates that included expenses from other subsidiaries of Omni. (Compl. ¶¶ 24-27.) The Government identified specific cost reports, submitted by or on behalf of the named affiliates, which included goods or services for other Omni affiliates. (Compl. ¶¶ 28-29.)

The Government also detailed allegations of occasions on which Omni affiliates

submitted cost reports for reimbursement of services for salary expenses of employees who provided services to affiliates that were not eligible Medicare and Medicaid program participants. (Compl. ¶ 35.) The Government further alleges that from January 1, 2002 to December 31, 2003, Omni submitted multiple false claims and, as a result received significant overpayments. According to the Government, Omni received overpayments as a result of knowing use of incorrect billing codes, upcoding, and inflating medical services and medical service times. (Compl. ¶¶ 39-45.)

In his recast complaint, Nichols seeks to bring what he contends are additional, separate and distinct claims "based on the enormous number of electronic requests for reimbursement presented or caused to be presented by the Defendants to Medicare and/or Medicaid during all times relevant to this cause of action." (Recast Compl. ¶ 15.) Independent of the Government's action based on false cost reports, Nichols seeks to bring a false claims action for "<u>each and every</u> electronic request for reimbursement presented or caused to be presented by the Defendants." (Recast Compl. ¶ 16.) Nichols explains in his recast complaint that he "will seek discovery to determine the exact number of electronic filings at issue, and will make proof of the precise number of electronic filings at issue." (Recast Comp. ¶ 19.)

The Court agrees with Defendants that Nichols' pleading is insufficient to satisfy the stringent standards for pleading False Claims Act causes of action in this Circuit. Under the standard set forth in <u>Clausen</u>, it is not enough for a qui tam plaintiff to spell

out in detail the fraudulent schemes allegedly employed by a defendant. Nor is it sufficient to set out in detail the process by which false claims could be produced. In addition to such allegations, a qui tam plaintiff must identify the claims that were actually submitted and must set forth facts sufficient to show that the conduct alleged actually resulted in the submission of false claims. As the Eleventh Circuit explained in <u>Clausen</u>, it is not merely engaging in improper practices that gives rise to a False Claims Act cause of action, but the "call upon the government fisc" for payment that gives rise to liability: "The submission of a claim is thus not . . . a 'ministerial act,' but the *sine qua non* of a False Claims Act violation." <u>Clausen</u>, 290 F.3d at 1311.

When tested under the standard set forth in <u>Clausen</u>, Nichols' claims fall short. Even if the Court were to incorporate the allegations of the Government's amended complaint into Nichols' recast complaint, the allegations are still insufficient as to Nichols' claims. The Government's allegations relate to specific cost reports filed on specific dates by Omni or its affiliates. Nichols goes much further, however, and attempts to incorporate each and every electronic request for reimbursement presented to Medicare and Medicaid in the past and continuing to the present without identifying with particularity how they were made, or why they were made, or why they were fraudulent, or who made them. Nichols has not attempted to identify even one allegedly false electronic filing by date or amount. In this respect his complaint suffers from the same failings as the relator's complaint in <u>Clausen</u> and, therefore, fails to satisfy the requirements of Rule 9(b).

In qui tam actions such as this one, there are no bright lines for determining when a complaint states a claim with sufficient detail to satisfy the particularity requirements of Rule 9(b). Nevertheless, the Court is satisfied that Rule 9(b) demands more than that which Nichols has provided here. Accordingly, Defendants' Motion to Dismiss is granted as to that portion of Nichols' recast complaint relating to the number of false claims at issue.

### C. Quality of Care Issues

The Government declined to intervene as to those claims described by Nichols as "quality of care issues." (Notice at 1.) In his recast complaint, Nichols attempts to proceed with these quality of care claims, describing the manner in which Defendants allegedly falsified patient records "to make it appear that patient care had been given, when in fact it had not." (Recast Compl. ¶ 20.) According to Nichols, the patients at the Defendant facilities "were neglected and suffered greatly as a result of these practices." (Recast Compl. ¶ 22.) Defendants have moved for dismissal of these claims, contending that quality of care allegations are not actionable under the False Claims Act, and further contending the allegations fail to satisfy the specificity requirements of Rule 9(b).

Review of Nichols' original complaint shows that Nichols' theory as to the quality of care issues is that Defendants falsified patient care records for the purpose of deceiving the inspectors from the Office of Regulatory Services as to the quality of care

13

the patients were receiving. The purpose of this deception was to enable Defendants to meet the conditions of participation in the Medicare and Medicaid programs. (Compl. ¶¶ 17-18.) According to Nichols, these deceptive practices resulted in the submission of false claims in violation of 31 U.S.C.A. §§ 3729 and 3730. (Compl. ¶ 20.) In his recast complaint, Nichols does not spell out his theory with the same degree of specificity but restates his claim that Defendants falsified patient care records for the purpose of making it appear that the patients were receiving better care than that which was actually provided.

It thus appears to the Court that Nichols' False Claims Act theory arising from the quality of care provided by Defendants is that each claim for reimbursement for patient care submitted by Defendants was false because, were it not for their falsification of patient care records, Defendants would not be in a position to seek reimbursement under either the Medicare or Medicaid program. Defendants argue that allegations based on the quality of care are not actionable under the False Claims Act.

This Court need not address whether the quality of care issues raised by Nichols' recast complaint are actionable under the False Claims Act because to the extent Nichols intended to bring such claims under the False Claims Act, they fail to satisfy the particularity requirements of Rule 9(b). Neither the original complaint, in which Nichols first raised the quality of care issues, nor the recast complaint do little more than identify a scheme by which Defendants allegedly falsified records. As discussed in the previous section, in this Circuit, a prospective qui tam plaintiff must do more than

set forth a scheme by which false claims can be submitted; a qui tam plaintiff must provide specific details as to the who and the how and the when of each fraudulent act.

Here, although Nichols' theory appears to be that each submission for payment was false because of the falsification of records leading up to the requests for payment, the complaint is nevertheless lacking in detail. It is not enough for Nichols to allege that falsifying patient records was "a widespread practice" and "not uncommon." In order to satisfy the requirements of Rule 9(b), Nichols was required to allege with particularity what records were falsified as to which patient. Furthermore, given the nature of the allegations, Nichols was required to offer some detail linking the fraudulent practices of each Defendant to the participation requirements for Medicare and Medicaid, and to further link the fraudulent practices of each Defendant with the submission of claims for payment. When tested under the standards demanded by the Eleventh Circuit in <u>Clausen</u>, even assuming such claims are actionable, the allegations are insufficient to satisfy Rule 9(b). Accordingly, Defendants' Motion to Dismiss is granted with respect to Nichols' quality of care issues.

## III. CONCLUSION

In view of the foregoing, the Court grants Defendants' Motion as to each section of Nichols' Recast Second Amended Complaint. All claims brought by Nichols are hereby dismissed.

**SO ORDERED**, this the 31st day of March, 2008.

*s/    Hugh Lawson*
**HUGH LAWSON, JUDGE**

mls